BLECKLEY, executor, *v.* BLECKLEY.

48

No. 12894. September 16, 1939. Rehearing denied October 14, 1939.

50

*Bynum & Frankum,* for plaintiff in error.

*Wheeler & Kenyon, Charles J. Thurmond, Holden & Smith,* and *Joseph T. Davis,* contra.

BELL, Justice. (After stating the foregoing facts.)

As we construe the allegations and prayers, the plaintiff sought conventional subrogation, an equitable remedy, independently of statute. Whether the petition stated a cause of action for this relief is a different question. The jurisdiction of this court is not limited to good cases in equity, but will embrace both good and bad equity cases. *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 818 (180 S. E. 847). Nor is a plaintiff required to classify or name his petition. *Malone* v. *Robinson,* 77 *Ga.* 719 (2-a); *English* v. *Little,* 164 *Ga.* 805 (2-a) (139 S. E. 678). The case was properly transferred to this court, not because of the receivership, as to which no question is involved (*Brightwell* v. *Oglethorpe Telephone Co.,* 176 *Ga.* 65, 166 S. E. 646; *Spence* v. *Miller,* 176 *Ga.* 96, 167 S. E. 188), but because it is a suit for conventional subrogation, of which only a court of equity has jurisdiction. *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204); *Lee* v. *Holman,* 182 *Ga.* 559 (186 S. E. 189), s. c. 52 *Ga. App.* 543 (183 S. E. 837), retained by this court after transfer. The case differs from *Watkins* v. *Woodbery,* 148 *Ga.* 249 (96 S. E. 338), in which the plaintiff sought the relief of subrogation as provided by statute. Compare *Irby* v. *Livingston,* 81 *Ga.* 281 (6 S. E. 591). It differs also from *Jasper School District* v. *Gormley,* 184 *Ga.* 756 (193 S. E. 248), s. c. 55 *Ga. App.* 391 (190 S. E. 366), returned to the Court of Appeals after transfer, and from *Firemen's Fund Insurance Co.* v. *Thomas,* 177 *Ga.* 427 (170 S. E. 222), brought first to this court and afterwards transferred (49 *Ga. App.* 731, 176 S. E. 690), there being in the last two cited cases no prayer for equitable relief. It is contended by the plaintiff in error that the present

petition contained no sufficient prayer for such relief. It did not pray for subrogation by name, but there was a prayer for general relief; and in view of this general prayer and the specific allegations, it is apparent that the plaintiff was seeking the equitable relief of conventional subrogation. "Under a general prayer in an equity case, the plaintiff may have such relief as is consistent with and entirely within the scope of the pleadings." *Broderick v. Reid,* 164 *Ga.* 474 (2) (139 S. E. 18). See also *McGarrah v. Bank of Southwestern Georgia,* 117 *Ga.* 556 (43 S. E. 987).

▪ Mrs. Bleckley was a legatee under the will of her husband. The legacy had not been paid, and for the purposes of this case she may be considered as a creditor of the husband's estate. In *Wilkins v. Gibson,* supra, it was held in effect that subrogation may be decreed in favor of any person who advances money under an agreement, express or implied, made either with the debtor or the creditor, that he will be subrogated to the rights and remedies of the creditor; the term "conventional subrogation" being applied in such case because of the agreement. The rule would not be limited to advancement of money, but might include services or other thing of value. The allegations were sufficient to show that the plaintiff rendered services for his mother under an agreement with her as such creditor that he would be subrogated to her rights and remedies against the estate. Therefore the petition was good in substance, to this extent, as a suit for conventional subrogation. *Thomas v. Lesler,* 166 *Ga.* 274 (142 S. E. 870) ; *Cornelia Bank v. First National Bank,* 170 *Ga.* 747 (154 S. E. 234).

▪ The foregoing conclusion will virtually control most of the other questions in the case. The plaintiff was not relying upon a cause of action against Mrs. J. S. Bleckley or her estate, but was seeking to be subrogated to her claim against the estate of J. S. Bleckley. Consequently the statute of limitations which might have applied in case of suit against Mrs. Bleckley or a legal representative of her estate is without application. If the plaintiff is subrogated to her legacy, he had the same time in which to bring suit that she would have had for suit against the executor on the same cause of action. *Hull v. Myers,* 90 *Ga.* 674 (4) (16 S. E. 653) ; *Train v. Emerson,* 141 *Ga.* 95 (80 S. E. 554, 49 L. R. A. (N. S.) 950) ; *Lamis v. Callianos,* 57 *Ga. App.* 238 (2) (194 S. E. 923). In such case the period would have been ten years after qualification

of the executor, plus the twelve months exemption from suit accorded to executors and administrators. Code, §§ 3-709, 113-1526; *Thornton* v. *Jackson,* 129 *Ga.* 700 (59 S. E. 905); *Garner* v. *Lankford,* 147 *Ga.* 235 (2) (93 S. E. 411); *Whelchel* v. *Haynes,* 148 *Ga.* 307 (96 S. E. 568); *Coney* v. *Horne,* 93 *Ga.* 723 (20 S. E. 213). The executor qualified on February 2, 1925. The suit was filed in less than eleven years, to wit: November 22, 1935. Accordingly, the suit was not barred even as to the first instalment of the annuity, much less as to instalments later accruing.

■ Another ground of demurrer was that the petition did not show a written contract between the plaintiff and his mother, and did not allege whether the agreement was oral or in writing. The court did not err in overruling this ground. If the contract was one required by law to be in writing, the presumption is that it was in writing. *Draper* v. *Macon Dry Goods Co.,* 103 *Ga.* 661 (30 S. E. 566, 68 Am. St. R. 136); *Walker* v. *Edmundson,* 111 *Ga.* 454 (36 S. E. 800). More in point, however, is the rule that an agreement for subrogation need not be in writing. *Lee* v. *Holman,* 182 *Ga.* 559 (3) (186 S. E. 189). Hence it was unnecessary for the plaintiff to allege either that the contract was in writing, or whether it was in writing or not.

■ The demurrant further contended that, owing to the relationship, the plaintiff could not claim that he was entitled to compensation for services to his mother, in the absence of a written contract. There was no merit in this contention. While the presumption would be that the services were rendered voluntarily, and therefore would not support a claim of subrogation, yet it was only necessary to allege sufficient facts and circumstances to indicate that it was the intention of both parties that compensation should be made, and to negative the idea that the services were performed merely because of a natural sense of duty or affection arising out of the relationship. *O'Kelly* v. *Faulkner,* 92 *Ga.* 521 (17 S. E. 847); *Phinazee* v. *Bunn,* 123 *Ga.* 230 (51 S. E. 300); *Edwards* v. *Smith,* 42 *Ga. App.* 730 (157 S. E. 348). As to this feature of the case, the plaintiff was not required to allege a written contract, or even an express contract. The allegations were sufficient to rebut the presumption, and to show an intention by both parties that the plaintiff would be compensated by subrogation to his mother's claim against the estate.

■ There was no merit in the contention presented by the demurrer that the plaintiff failed to show a contract with the testator or with any legal representative of his estate for the performance of the services by the plaintiff to his mother. No such allegation was necessary, in view of the averment that the services were rendered under an agreement with Mrs. Bleckley, as indicated. As stated in *Wilkins* v. *Gibson,* supra, such an agreement, either with the debtor or with the creditor, may supply basis for subrogation.

■ In one ground of demurrer it was urged that the plaintiff could not recover, for the reason that on the death of Mrs. Bleckley any portion of the annuity which she had not disposed of reverted under item 5 of the will to the children and grandchildren of the testator. While any portion of the annuity which had not been disposed of would revert as stated, yet the annuity provided for in item 2 was unconditional so long as Mrs. Bleckley lived, and she could agree with the plaintiff that for services rendered by him he would be substituted in her place with respect to such legacy. Such an agreement, if made, constituted a disposition of the legacy by Mrs. Bleckley during her lifetime, within the meaning of the will, to the extent of the value of the services rendered. Accordingly, the plaintiff's action was not defeated by reversion of the legacy on the death of his mother. The defendant further contended that the petition was defective for the reason that it did not show an intention by the parties to effectuate an immediate change of ownership with respect to the legacy in question, as must be done in order to establish a valid equitable assignment. Compare *Brown Guano Co.* v. *Bridges,* 34 *Ga. App.* 652, 656 (130 S. E. 695). The plaintiff is not relying upon an equitable assignment in the ordinary sense of the term. Such an assignment is one executed between the parties, and entitles the assignee to an immediate right without action of court, whereas an agreement by which a party may be subrogated is not self-executing, but requires a decree of court to give it effect and to fix the rights of the parties. *Hull* v. *Myers,* 90 *Ga.* 674 (4), 683 (16 S. E. 653) ; *Wilkins* v. *Gibson,* supra; *Fender* v. *Fender,* 30 *Ga. App.* 319 (117 S. E. 676) ; *Dabney* v. *Brigman Motors Co.,* 32 *Ga. App.* 652 (124 S. E. 370) ; 60 C. J. 823, § 124. Accordingly, the petition was not subject to demurrer upon the ground that the alleged agreement did not appear to constitute a presently effective equitable assignment.

■ The defendant further contended that the petition showed upon its face that the suit was barred by laches. The petition does not affirmatively show that it was subject to such defense, and therefore the court did not err in overruling this ground of demurrer. See division 12 infra, and authorities there cited. The petition stated a cause of action, and the demurrer was properly overruled on all grounds.

■ Grounds 5, 6, and 7 of the motion for new trial complained of the admission of testimony as to the value of the services rendered, the contention being that the plaintiff had sued upon an express agreement but was seeking by his evidence to prove a cause of action based upon a quantum meruit. The court did not err in admitting the testimony. The action was based upon the theory of subrogation; and such being the case, the plaintiff could in no event recover more than the value of the services. It was therefore necessary to prove value. *Wilkins* v. *Gibson,* supra.

■ Grounds 8, 9, and 10 complained that the court erred in admitting testimony of the wife and of employees of the plaintiff, in regard to the kind and value of the services rendered, and in reference to the alleged agreement between the plaintiff and his mother; the contention being that since the proceeding was a suit against the legal representative of the testator, J. S. Bleckley, the witnesses, as agents of the plaintiff, were incompetent to testify, under the Code, § 38-1603. None of the evidence related to a transaction or communication with the testator, and the evidence statute invoked was not applicable. *Florida Central & Peninsular Railroad Co.* v. *Usina,* 111 *Ga.* 697 (3) (36 S. E. 928) ; *Parker* v. *Salmons,* 113 *Ga.* 1167 (39 S. E. 475) ; *Hall* v. *Hilley,* 139 *Ga.* 13 (2) (76 S. E. 566) ; *Holmes* v. *Maddox,* 175 *Ga.* 365 (165 S. E. 92).

■ Ground 13 complained of a charge to the jury on the subject of payment, the alleged error being that the charge was not adjusted to any contention made by the defendant. This assignment of error is not sustained by the record. Grounds 14 and 15 also complained of charges to the jury. These charges were in substantial accord with the principles hereinbefore stated, and were not erroneous for any reason assigned.

■ Other grounds of the motion are controlled adversely to the movant by one or more of the principles hereinbefore stated, and do not require special mention. It was contended, under the general

grounds, that the evidence did not support the verdict, in that no agreement between the plaintiff and his mother was proved as alleged. The direct and circumstantial evidence was sufficient to prove the case as laid.

It is further contended that the evidence established as a matter of law that the plaintiff's case was barred by laches. We can not sustain this contention. As shown in division 3 above, if Mrs. Bleckley had lived and had filed a suit to recover the legacy at the same time the present suit was instituted, her action would not have been barred by limitation. It is true that as against the present plaintiff there might be an equitable bar on the ground of laches, aside from the statute, but it can not be said as a matter of law that the action was barred. The following among other principles relate to laches: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." Code, § 37-119. Mrs. Bleckley died in December, 1929; but even if the plaintiff had sued immediately after her death, the situation would have been the same, so far as lacking testimony from her, although the petition was not filed until nearly six years after her death. It does not appear that there were any funds in the estate from which the plaintiff might have realized payment until after a sale of the real estate, and this was so involved that a judgment could not have been levied if recovered.

It is insisted that the plaintiff should have given the defendant notice of his claim, and that none was ever given before the suit was filed, although much litigation had taken place between the parties. While the plaintiff's failure to give notice and his delay in filing suit might have tended to cast suspicion upon his claim and to affect his credibility as a witness, these were matters for the jury. The plaintiff himself gave very little testimony, depending upon the testimony of others. It may be that the court considered that he was incompetent to testify as to transactions and communications with his mother. We do not say that he was or was not competent, since the question is not involved in the case as presented to this court. The evidence did not demand the inference that the defendant's position or the condition of the estate was in any way altered by reason of the delay, or that the rights of any other person were affected thereby. "There is no absolute

rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another. Each case is to be determined according to its own particular circumstances. . . Laches is not, like limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced, an inequity founded on some intermediate change in conditions." *Equitable Building & Loan Association* v. *Brady,* 171 *Ga.* 576, 585 (156 S. E. 222); *Citizens & Southern National Bank* v. *Ellis,* 171 *Ga.* 717 (3-c) (156 S. E. 603); *Bass* v. *Milledgeville,* 180 *Ga.* 156 (178 S. E. 529); *Dollar* v. *Fred W. Amend Co.,* 184 *Ga.* 432 (191 S. E. 696), 60 C. J. 829, § 133.

The evidence supported the verdict. The court did not err in refusing a new trial. It is contended in the brief that the decree is erroneous, so far as it directed T. H. Bleckley, as receiver, to pay the sum recovered against T. H. Bleckley as executor, for the reason that such direction was not in accordance with the petition and the recovery thereon. There is no assignment of error on the decree, raising this question. *Floyd* v. *Boss,* 174 *Ga.* 544 (6), 549 (163 S. E. 606); *Bolton* v. *Kelly,* 169 *Ga.* 309 (5) (150 S. E. 203); *DeLoach* v. *Sikes,* 166 *Ga.* 39 (5) (142 S. E. 150).

*Judgment affirmed. All the Justices concur, except Grice, J., disqualified.*